1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  EDDIE DEAN MORGAN,                    1:09-cv-00210-AWI-DLB (HC)

10                      Petitioner,      FINDINGS AND RECOMMENDATION
                                         REGARDING RESPONDENT'S MOTION TO
11          v.                           DISMISS

12                                       [Doc. 15]
     MIKE MARTELS, Warden
13
                         Respondent.
14  _____/

15

16          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17  pursuant to 28 U.S.C. § 2254.

18                                  BACKGROUND

19          Petitioner is currently in the custody of the California Department of Corrections and

20  Rehabilitation following convictions for rape, sexual penetration with a foreign object, oral

21  copulation, and kidnapping with the intent to commit a sexual offense.  Several sentencing

22  enhancements were also found true.  On February 23, 1998, Petitioner was sentenced to an

23  indeterminate state prison term of twenty-five years to life, plus a consecutive determinate term

24  of seventeen years.  (Lodged Doc. No. 1.)

25          Petitioner filed a timely notice of appeal.  On February 15, 2000, the California Court of

26  Appeal, Fifth Appellate District, vacated the true findings with regard to the California Penal

27  Code section 667.61(e)(4) special circumstances allegation and affirmed the conviction and

28  judgment in all other respects.  (Lodged Doc. No. 2.)  An amended abstract of judgment issued

1

1    on June 19, 2000.  (Lodged Doc. 6.)

2         On June 2, 2000, the California Supreme Court denied review.

3         Petitioner filed four pro se state post-conviction collateral petitions for writ of habeas

4    corpus relating to the pertinent judgment or claims.  The first petition was filed in the Kern

5    County Superior Court on May 24, 2001, and denied on June 21, 2001.  (Lodged Doc. Nos. 5-6.)

6         The second petition was filed in the Kern County Superior Court on April 23, 2007, and

7    denied on June 20, 2007. (Lodged Doc. Nos. 7-8.)

8         The third petition was filed in the California Court of Appeal, Fifth Appellate District on

9    December 3, 2007.  (Lodged Doc. No. 9.)  The petition was denied on December 10, 2007.

10   (Lodged Doc. No. 10.)

11        The fourth petition was filed in the California Supreme Court on January 23, 2008.

12   (Lodged Doc. 11.)  The petition was denied on August 13, 2008.  (Lodged Doc. No. 12.)

13        The instant petition for writ of habeas corpus was filed on February 2, 2009.  (Court Doc.

14   1.)  Respondent filed the instant motion to dismiss on April 3, 2009.  (Court Doc. 15.)  Petitioner

15   filed an opposition on June 10, 2009.  (Court Doc. 19.)

16                                  DISCUSSION

17   A.    Procedural Grounds for Motion to Dismiss

18        Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

19   petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not

20   entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

21        The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer

22   if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of

23   the state's procedural rules. See e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990)

24   (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White

25   v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review

26   motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12

27   (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss after the court orders a

28   response, and the Court should use Rule 4 standards to review the motion.  See Hillery, 533 F.

1    Supp. at 1194 & n. 12.

2           In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C.

3    2244(d)(1)'s one-year limitations period.  Therefore, the Court will review Respondent's motion

4    to dismiss pursuant to its authority under Rule 4.

5    B.    Limitation Period for Filing a Petition for Writ of Habeas Corpus

6           On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

7    of 1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas

8    corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059,

9    2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), cert. denied, 118

10   S.Ct. 586 (1997).  The instant petition was filed on February 2, 2009, and thus, it is subject to the

11   provisions of the AEDPA.

12          The AEDPA imposes a one year period of limitation on petitioners seeking to file a

13   federal petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, Section 2244,

14   subdivision (d) reads:

15          (1)  A 1-year period of limitation shall apply to an application for a writ of
       habeas corpus by a person in custody pursuant to the judgment of a State court.
16     The limitation period shall run from the latest of –

17          (A) the date on which the judgment became final by the conclusion of
       direct review or the expiration of the time for seeking such review;
18
            (B) the date on which the impediment to filing an application created by
19     State action in violation of the Constitution or laws of the United States is
       removed, if the applicant was prevented from filing by such State action;
20
            (C) the date on which the constitutional right asserted was initially recognized
21     by the Supreme Court, if the right has been newly recognized by the Supreme Court and
       made retroactively applicable to cases on collateral review; or
22

23          (D) the date on which the factual predicate of the claim or claims
       presented could have been discovered through the exercise of due diligence.
24
            (2) The time during which a properly filed application for State post-
25     conviction or other collateral review with respect to the pertinent judgment or
       claim is pending shall not be counted toward any period of limitation under this
26     subsection.

27
       In most cases, the limitation period begins running on the date that the petitioner's direct
28

3

1  review became final.[1]  Here, the California Supreme Court denied review on June 2, 2000.

2  (Lodged Doc. No. 4.)  The state appeal process became final on August 31, 2000, when the

3  ninety day period for filing a petition for writ of certiorari expired.  Supreme Court rule 13;

4  <u>Bowen v. Roe</u>, 188 F.3d 1157 (9th Cir. 1999); <u>Smith v. Bowersox</u>, 159 F.3d 345 (8th Cir. 1998).[2]

5  Therefore, the one year limitations period began on the following day, September 1, 2000, and

6  absent tolling, was set to expire on August 31, 2001.  <u>See Patterson v. Stewart</u>, 251 F.3d 1243,

7  1245 (9th Cir. 2001) (holding that Rule 6(a) of the Federal Rules of Civil Procedure governs the

8  calculation of statutory tolling applicable to the one year limitations period.)

9  C.      <u>Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)</u>

10          Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed

11  application for State post-conviction or other collateral review with respect to the pertinent

12  judgment or claim is pending shall not be counted toward" the one year limitation period.  28

13  U.S.C. § 2244(d)(2). In <u>Carey v. Saffold</u>, the Supreme Court held the statute of limitations is

14  tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled

15  during the intervals between one state court's disposition of a habeas petition and the filing of a

16  habeas petition at the next level of the state court system. 536 U.S. 214, 215 (2002); <u>see also</u>

17  <u>Nino v. Galaza</u>, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied,* 120 S.Ct. 1846 (2000).

18  Nevertheless, state petitions will only toll the one-year statute of limitations under § 2244(d)(2) if

19  the state court explicitly states that the post-conviction petition was timely or was filed within a

20  reasonable time under state law. <u>Pace v. DiGuglielmo</u>, 544 U.S. 408 (2005); <u>Evans v. Chavis</u>,

21  546 U.S. 189 (2006). Claims denied as untimely or determined by the federal courts to have been

22  untimely in state court will not satisfy the requirements for statutory tolling. <u>Id</u>.  Here, Petitioner

23

24          [1] Although the limitations period may begin running later under certain specified circumstances, none are
25  applicable here.  28 U.S.C. § 2244(d)(1)(B)-(D).

26          [2] Because the Court of Appeal struck  one of the sentencing enhancements an amended abstract of judgment
    was issued on June 19, 2000.  (Lodged Doc. No. 6.)  Petitioner arguably would have sixty days thereafter to appeal
27  the amended judgment, until August 18, 2000; however, greater benefit is afforded him by assuming the limitations
    period was triggered by the expiration of the ninety-day period to seek certiorari.  Therefore, this Court is proceeding
28  on the best case scenario for Petitioner, and direct review concluded on August 31, 2000, when the 90-day period to
    seek certiorari expired.

4

filed four state court post-conviction collateral actions.

_____1.   *Expiration of Limitations Period Prior to Filing First State Petition*

As noted, the limitations period commenced running on September 1, 2000, and continued to run until May 24, 2001, the date the first petition was filed.[3]  Consequently, 265 days of the initial one-year limitation period expired at the time the first state petition was filed.

2.   *Tolling for Period of Time First State Petition was Pending*

Petitioner is entitled to tolling for the entire time that the first state petition was pending in the Kern County Superior Court.  Therefore, the first petition provides twenty-nine days tolling for the period from May 24, 2001 through June 21, 2001.  (Lodged Doc. Nos. 5-6.)

3.   *No Tolling for Period of Time Between Denial of First State Petition and Filing of Second State Petition*

As just stated, the first state petition was denied on June 21, 2001, and the second state petition was not filed until April 23, 2007, nearly six years later.  Petitioner is not entitled to interval tolling for this period of time.

Initially, because the first and second state petitions were both filed in the Kern County Superior Court, no tolling is available because the second petition was not filed at the next state appellate level.  Nino v. Galaza, 183 F.3d 1003, 1006-1007 (9th Cir. 1999); see also Dils v. Small, 260 F.3d 984, 986 (9th Cir. 2001).  Because the second petition was filed again at the Kern County Superior Court, Petitioner was not proceeding in an orderly fashion and his petition was successive.  Lewis v. Mitchell, 173 F.Supp.2d 1057, 1061 (C.D. Cal. 2001) (no statutory tolling for successive superior court petitions); see also Dils v. Small, 260 F.3d at 986 (same).

Further, a state application is "pending" between a lower court's denial of relief and filing in a higher court, providing that the filing in the higher court is timely under state law.  Carey v. Saffold, 536 U.S. 214 (2002).  There is no doubt that Petitioner unreasonably delayed in filing the second petition, as he waited over five years (2,131 days) after the denial of the first petition.

---

[3]  Rule 3(d) of the Rules Governing Section 2254 Proceedings provides that documents submitted to the court by confined inmates are deemed filed on the day they are deposited in the institution's internal mailing system.  The first state collateral petition is not dated and does not contain a proof of service.  (Lodged Doc. No. 5.)  Therefore, Petitioner does not benefit from the mailbox rule.

1   (Lodged Doc. Nos. 6-7.)  In Evans v. Chavis, 546 U.S. 189, the Court found that a delay of six

2   months in filing a petition to the California Supreme Court was "far longer than the 'short

3   period[s] of time,' 30 to 60 days, that most States provide for filing an appeal to the state

4   supreme court." Id. at 201 (citing Carey v. Saffold, 536 U.S. at 219); Waldrip v. Hall, 548 F.3d

5   729, 731, 735 (9th Cir. 2008) ("Evans made clear that an unexplained delay of six months

6   between the denial by one California state court and a new filing in a higher California court was

7   too long to permit tolling of the federal limitations period on the ground that state court

8   proceedings were 'pending.'").  In Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006), the

9   Court held that delays of eighteen, fifteen and ten months were unreasonable.  As a consequence,

10  2,131 days of the limitations period expired between the denial of the first petition and filing of

11  the second petition, resulting in a total of 2,396 untolled days.

12        4.  *End of Limitations Period*

13        With the benefit of tolling during the pendency of the first state petition (twenty-nine

14  days) the limitations period expired on September 29, 2001.  Since Petitioner did not file the

15  instant federal petition until February 2, 2009, he exceeded the one-year period by over seven

16  years and it is clearly untimely.

17        5.  *Subsequent State Court Petitions Do Not Have Any Tolling Effect*

18        Petitioner's second through fourth state habeas corpus petitions do not serve to toll the

19  limitations period, because the earliest of the actions was not filed until April 2007, well over

20  five years after the limitations period expired.  Therefore, the second through fourth petitions do

21  not extend the limitations period.  (Lodged Doc. Nos 7-12.)  Jiminez v. Rice, 276 F.3d 478, 482

22  (9th Cir. 2001).  In addition, the fourth state petition was explicitly denied as "untimely" with

23  citation to In re Robbins, 18 Cal.4th 770, 780 (1998). (Lodged Doc. No. 12.)  Robbins stands for

24  the proposition that delayed claims will not be heard.  Thorson v. Palmer, 479 F.3d 643, 645 (9th

25  Cir. 2007) (holding that a citation to Robbins at p.780 means petition is not timely). Therefore,

26  the fourth state petition was not properly filed under § 2244(d)(2) and tolling is not available.

27  Pace v. DiGulielmo, 544 U.S. 408, 414-415 (2005) (holding a petition for writ of habeas corpus

28  rejected by a state court as untimely is not "properly filed" within the meaning of the statutory

6

1   tolling provisions of AEDPA); <u>Bonner v. Carey</u>, 425 F.3d 1145, 1149 (9th Cir. 2005) (same). For

2   this additional reason, there can be no tolling during the pendency of the fourth state petition.

3   D.      Later Trigger Date Under § 2244(d)(1)(D)

4          Petitioner contends that the delay is justified because of newly discovered evidence

5   concerning the victim's credibility, jury misconduct, ineffective assistance of trial counsel, and

6   misconduct by law enforcement and the prosecutor.

7          Section 2244(d)(1)(D) provides that the limitations period runs from the date on which

8   the factual predicate of the claim or claims presented could have been discovered through the

9   exercise of due diligence.  With respect to a claim of newly-discovered evidence, the limitations

10  period begins to run when the petitioner discovers the factual predicate of the claims and not

11  from the discovery of evidence later found to support such claims.  <u>Flanagan v. Johnson</u>, 154

12  F.3d 196, 199 (5th Cir. 1998); <u>Sorce v. Artuz</u>, 73 F.Supp.2d 292, 294-295 (E.D.N.Y. 1999).  In

13  addition, the limitations period commences when the factual predicate is known and not when its

14  legal significance is discovered.  <u>Hasan v. Galaza</u>, 254 F.3d 1150, 1154 N.3 (9th Cir. 2001).

15  Petitioner bears the burden of demonstrating the exercise of due diligence in discovering the

16  factual predicate of his claims.

17          1.   *Character Evidence Regarding Victim's Credibility*

18          With regard to new evidence relating to the victim's credibility, Petitioner submits

19  criminal case information printouts from the Kern County Superior Court, which demonstrate

20  that Ms. Rhoads (the victim in his underlying criminal case) was arrested, respectively, in 1999

21  and 2003 on five separate occasions.  It appears that Ms. Rhoads was convicted of five separate

22  offenses including, knowingly being at a place where drugs were being unlawfully used, driving

23  with an invalid license, resisting law enforcement, contributing to the delinquency of a minor,

24  and failure to appear.  (Court Doc. 19, Opposition, Exhibit C.)

25          Petitioner has failed to demonstrate the exercise of due diligence in obtaining such

26  information.  It is without dispute that this information is public record and was readily available

27  to Petitioner by way of telephone, written request, or internet.  Indeed, it appears that Petitioner

28  obtained this information from the Kern County Superior Court's criminal search address on the

7

Court's website.  Although Petitioner has shown that he discovered this information, he fails to

demonstrate why he did not or could not have discovered this information prior to May 20, 2009-

the date displayed on the bottom of the criminal case information printouts attached to his

opposition.  (Court Doc. 19, Opposition, Exhibit C.)  Despite this information being readily

available to Petitioner, the fact that he waited five years (2003 offenses) and nine years (1999

offenses) to obtain such information negates the finding that he acted with the requisite diligence.

Therefore, Petitioner has failed to meet his burden for a later trigger date of the limitations period

under section 2244(d)(1)(D).

> 2.  Newly Discovered Evidence of Jury Misconduct, Ineffective Assistance of Trial
>      Counsel, and Misconduct by Law Enforcement and Prosecutor

Petitioner contends that he did not learn of the factual predicate of his claims that there

was allegedly (1) jury misconduct, (2) ineffective assistance of trial counsel, and (3) misconduct

by law enforcement and the prosecutor until, respectively, August 2006 and April 2007.  In

support of his claims, he submits a August 21, 2006, declaration of his aunt, Nellie Ziegler;

declarations of his mother, Minnie Morgan, and his sister, Jenene Ann Hedrick, dated November

4, 2006; and the second declaration of his sister dated May 21, 2009.  (Opposition, at 3, 7, 10-11,

16.)

Nellie Ziegler declares that during Petitioner's trial she overheard one juror tell another

juror that "Well, we only have one thing left to decide.  We already know about the other

counts."  Ziegler claims that she informed Petitioner's trial counsel of the statement she

overheard, but counsel gave her the impression that it was of no significance.  As further support

for this claim, Petitioner submits the declaration of his mother, Minnie Morgan, who declares

that she observed Ms. Ziegler inform Petitioner's trial counsel of the alleged misconduct by the

two jurors.  (Lodged Doc. No. 16.)  Based on this information, Petitioner contends that there was

juror misconduct and ineffective assistance of trial counsel.  (Lodged Doc. No. 15.)

Petitioner's sister, Ms. Hedrick, declares in her November 4, 2006, declaration that her

testimony at trial and preliminary hearing was given under the threat of Deputy Sheriff Danny

Garner to take her son away from her.  She further contends that the District Attorney was upset

1  because she did not call her "brother a rapist" and she believed he would help Deputy Garner

2  carry through on his alleged threat.   Ms. Hedrick's claims that she told Petitioner of the threats

3  only after her son reached the age of eighteen. (Lodged Doc. No. 17.)

4      Respondent submits that these declarations are highly suspect, and the Court agrees.  The

5  fact that both Petitioner's aunt and mother allegedly overheard an unauthorized conversation

6  between two jurors and failed to inform Petitioner of such conversation until years after his trial

7  is hard to believe.  It is clear from the record that Petitioner's family were ready and willing to

8  assist him in his defense at trial if necessary. (Lodged Doc. No. 15.)  The fact that they now

9  contend they observed juror misconduct and trial counsel failed to take any steps to remedy such

10  action is contrary to their strong desire to assist Petitioner in his defense.  Furthermore, the fact

11  that *all of* the information is coming from Petitioner's mother, aunt, and sister makes it even

12  more suspect.  It has been routinely recognized that family members are considered to be

13  inherently biased.  See Bergmann v. McCaughtry, 65 F.3d 1372, 1380 (7th Cir. 1995) (family

14  members are readily impeachable because of inherent bias.)

15      In any event, even if it is assumed that Petitioner did not learn of the factual predicate of

16  his claims until a later date and the limitations period started at that later date, the federal petition

17  is nonetheless untimely.  More specifically, Petitioner's claim that he did not learn of the

18  information from Ms. Ziegler and Ms. Morgan until, respectively, August and November 2006 is

19  unfounded.  The declarations of both Ms. Ziegler and Ms. Morgan both indicate that Petitioner

20  was informed of the information regarding the alleged juror misconduct and counsel's failure to

21  act during an in person visit with him on October 31, 2005.[4] (Lodged Doc. Nos. 15-16.)  At a

22  minimum, Petitioner's statute of limitations would have commenced on that date-October 31,

23  2005, and would have expired one-year later, on October 31, 2006.  Thus, the instant petition

24  filed more than two years thereafter is clearly untimely.

25  _____

26  [4] In addition, Petitioner's statements in his opposition contradict him claim that he discovered the factual predicate in August 2006.  Petitioner specifically states that "[o]nce [he] obtained the information, which constituted

27  the 'factual predicate' of his claims, he then needed to obtain a copy of his trial transcripts. . ." (Opposition, at 19.) His incoming and outgoing legal mail log indicates that he most likely started to request a copy of his transcripts in

28  February 2006 from both his trial and appellate counsels and, indeed, received a copy of his transcripts in June 2006 from the California Court of Appeals.  (Opposition, at Exhs A & E.)

Likewise, the declaration of Ms. Hedrick reveals that she informed Petitioner of the alleged threats in November 2006, five months prior to April 2007-the date he claims he learned of such information.  (Lodged Doc. No. 17.)  Therefore, at best, the limitations period commenced on November 4, 2006-the date of Ms. Hedrick's declaration.  One hundred fifty-nine days of the limitations period expired prior to the filing of the second petition on April 12, 2007.  Another one hundred and sixty days elapsed between the denial of the second petition on June 20, 2007, to the filing of the third petition on November 28, 2007[5], and 404 days elapsed between the denial of the third petition on December 10, 2007, to the filing of the instant petition on January 17, 2009, resulting in a total of 723 days.[6,7]  Even with the benefit of statutory tolling during the pendency of the second and third petitions (total of eighty three days), Petitioner's claims of misconduct of law enforcement and prosecutors, expired on January 26, 2008.  Thus, the instant petition was filed nearly one year after the limitations period expired and is therefore time-barred under § 2244(d)(1).

E.   Actual Innocence Exception to Statute of Limitations

Petitioner contends that newly discovered evidence supports a finding that he is actually innocent of the crimes.  Neither the Supreme Court nor the Ninth Circuit has decided whether an actual innocence exception exists for the statute of limitations.  However, even if the Constitution requires such an exception, Petitioner fails to meet the standard.

First, Petitioner failed to pursue his claim with reasonable diligence.  A majority of the evidence Petitioner submits in support of his claim of actual innocence, i.e. the sexual assault examination results, were known to him early on, and, were presented and considered by the jury.

[5] Petitioner is not entitled to interval tolling for the delay of one hundred and sixty days because it was unreasonable under prevailing California law.  Evans v. Chavis, 546 U.S. at  201; Carey v. Saffold, 536 U.S. 214 (2002); Waldrip v. Hall, 548 F.3d 729, 731, 735 (9th Cir. 2008); Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006); Culver v. Director of Corrections, 450 F.Supp.2d 1135, 1140-1141 (C. D. Cal. 2006).

[6] These calculations give Petitioner the benefit of Rule 3(d) of the Rules Governing Section 2254 Proceedings which provides that documents submitted to the court by confined inmates are deemed filed on the day they are deposited in the institution's internal mailing system.  (See Lodged Docs. 7, 9; Court Doc. 1.)

[7] As discussed supra, the fourth petition was not properly filed and cannot serve to extend the limitations period because it was explicitly denied as untimely.  (Lodged Doc. Nos. 11-12.)

(Lodged Doc. No. 2.)  Petitioner cannot now attempt to bootstrap this evidence to the presentation of newly discovered evidence to evade the limitations period.

Second, Petitioner has completely failed to demonstrate a credible claim of actual innocence. In Schlup v. Delo, 513 U.S. 298, 327 (1995), the Supreme Court set forth the actual innocence standard in the procedural default context. The Schlup court stated that the actual innocence exception is satisfied where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id. Further, the petitioner must demonstrate that in light of the evidence no reasonable juror would have found him guilty. Id. at 329. The district court is free to consider all of the evidence, including that alleged to have been illegally excluded or to have become available only after trial. Id. at 327-328.  However, examples of evidence that may establish factual innocence include credible confessions by another, trustworthy eyewitness testimony, and exculpatory scientific evidence.  Sawyer v. Whitley, 505 U.S. 333, 340 (1992); Schlup, 513 U.S. 298; Pitts v. Norris, 85 F.3d 348, 351 (8th Cir.1996).

Petitioner claims that the newly discovered evidence of Ms. Rhoads' subsequent criminal convictions in 1999 and 2003, coupled with the fact that the sexual assault examination results were inconsistent with Ms. Rhoads' testimony concerning the assault, establishes he is actually innocent.  However, fatal to Petitioner's claim, is the fact that Ms. Rhoads' first criminal arrest occurred eighteen months *after* Petitioner was convicted, and did not have any bearing on her character at the time of her prior testimony.[8]

To the contrary, Respondent correctly notes that the record calls into doubt Petitioner's own credibility.  In his first state habeas petition, Petitioner claimed that the identification procedures used by law enforcement were impermissibly prejudicial because it unlawfully suggested he was the assailant.  Petitioner also noted that the other individuals who allegedly saw the victim with her assailant did not identify Petitioner as the suspect.  Petitioner also pointed out

---

[8] In addition, this claim is subject to dismissal as unexhausted because it was not presented to the California Supreme Court (see Lodged Doc. No. 11). 28 U.S.C. § 2254(b); Moore v. Quarterman, 491 F.3d 213, 220 (5th Cir. 2007) ("We have consistently held that a petitioner fails to exhaust state remedies when he presents material additional evidentiary support to the federal court that was not presented to the state court.").

Case 1:09-cv-00210-AWI-DLB   Document 25   Filed 08/21/09   Page 12 of 19

that the name given by the assailant to the victim was not his own name and there was no

forensic evidence to support that he and Ms. Rhoads had sex.  Thus, it appears Petitioner was

arguing that he was not the assailant.  Indeed, during an interview with law enforcement,

Petitioner denied being in his sister's car-the car Ms. Rhoads indicated the sexual assault

occurred-at the time of the incident. (Lodged Doc. No. 13.)  In a subsequent statement to a

probation officer, Petitioner denied sexually assaulting the victim, and claimed the two shared in

a consensual kill while in his sister's car. (Lodged Doc. No. 14.)  Now, in support of the instant

federal petition, Petitioner submits a declaration of his mother, Minnie Morgan, who contends

that in September of 2006 she saw and spoke with a man (who had the same build and facial

features and approximate age of Petitioner) at a Food Maxx store in Bakersfield, California.  The

man identified himself as "Sam." (Lodged Doc. No. 16.)  Now with the benefit of hindsight,

Petitioner cannot have it both ways.

However, the record is replete with conflicting statements by Petitioner involving the

incident.  Petitioner's account of the incident has evolved from initially not having been with the

victim to a subsequent claim that the two shared a consensual kiss.  Now, to the contrary,

Petitioner claims he "has never denied being with the alleged victim on the day of the offense or

having sex with the victim; however, Petitioner has always maintained that . . . the alleged victim

had voluntarily came with him, and that the sex was consensual."

Moreover, Ms. Rhoads' testimony of the circumstances surrounding the assault and

identification of Petitioner as the perpetrator were corroborated by other independent pieces of

evidence including, the car Petitioner drove at the time of the attack, the distinctive clothes that

he wore, the telephone call he made to his sister in which he made incriminating statements

about dropping a girl off at school and throwing a gun in a dumpster, and possession of

sunglasses and condoms similar to those of the suspect. (Lodged Doc. No. 2.)  `Accordingly,

Petitioner has failed to demonstrate actual innocence, even assuming such exception exists.

F.    Denial of Fourth Petition as Untimely Renders it Improperly Filed

Petitioner argues that it was unreasonable for the California Supreme Court to deny the

fourth petition as untimely because it was based on newly discovered evidence.  More

1   specifically, Petitioner claims that the state procedural bar imposed by the California Supreme

2   Court is insufficient to bar federal habeas corpus review.  Petitioner's claim is without merit.

3   　　　The United States Supreme Court has explained that there is a clear distinction between

4   time limitations, which are conditions to filing, and procedural bars, which are conditions to

5   obtaining relief.  Artuz v. Bennett, 531 U.S. 4, 8-11 (2000); accord Pace v. DiGuglielmo, 544

6   U.S. at 417.  A state's "'time limits, no matter their form, are 'filing' conditions.'"  Pace, 544

7   U.S. at 417.  For purposes of AEDPA's limitations period, a petition denied by a state court as

8   untimely is not "properly filed" and the state is not required to show that its timeliness rule is

9   adequate and consistently applied.  Walker v. Norris, 436 F.3d 1026, 1031 (8th Cir. 2006).  When

10  a state court expressly indicates that a collateral petition is untimely, "'that [is] the end of the

11  matter' for purposes of § 2244(d)(2)."  Pace, 544 U.S. at 415 (quoting Saffold, 536 U.S. at 226);

12  see also Walker v. Norris, 436 F.3d at 1031.

13  　　　In this instance, the California Supreme Court's denial of the fourth petition as untimely

14  with citation to In re Robbins, 18 Cal.4th 770, 780 (1998), is a clear indication that the petition

15  was untimely and that is the end of the matter for purposes of § 2244(d)(2) review.  See Thorson

16  v. Palmer, 479 F.3d at 645 ("[t]he Court's summary order cites the very page of Robbins that sets

17  forth 'the basic analytical framework' governing California's timeliness determinations in habeas

18  corpus proceedings. See Robbins, 18 Cal.4th at 780, 77 Cal.Rptr.2d 153, 959 P.2d 311.").

19  　　　In any event, for the reasons discussed above, it is highly likely that the California

20  Supreme Court found, that the declarations of Petitioner's family members were not credible, and

21  Petitioner unreasonably delayed in presenting the "newly discovered" evidence to the state

22  courts.  Thus, the California Supreme Court's ruling that the fourth petition was untimely was

23  reasonable.  Accordingly, the fourth state court petition was not properly filed and has no tolling

24  effect.  Pace v. DiGuglielmo, 544 U.S. at 417; Saffold, 536 U.S. at 226; Thorson v. Palmer, 479

25  F.3d at 645.

26  G.      Equitable Tolling

27  　　　The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1)

28  that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

13

1  stood in his way." <u>Pace v. DiGuglielmo</u>, 544 U.S. at 418; <u>see</u> <u>also</u> <u>Irwin v. Department of</u>

2  <u>Veteran Affairs</u>, 498 U.S. 89, 96 (1990); <u>Calderon v. U.S. Dist. Ct. (Kelly)</u>, 163 F.3d 530, 541

3  (9th Cir. 1998), <i>citing</i> <u>Alvarez-Machain v. United States</u>, 107 F.3d 696, 701 (9th Cir. 1996), <i>cert</i>

4  <i>denied</i>, 522 U.S. 814 (1997). Petitioner bears the burden of alleging facts that would give rise to

5  tolling. <u>Pace</u>, 544 U.S. at 418; <u>Smith v. Duncan</u>, 297 F.3d 809 (9th Cir.2002); <u>Hinton v. Pac.</u>

6  <u>Enters.</u>, 5 F.3d 391, 395 (9th Cir.1993).

7       In his opposition, Petitioner contends that the limitations should be equitably tolled

8  because (1) he and his family are indigent, (2) he lacked transcripts and supporting

9  documentation, and (3) he has been engaged in an ongoing investigation to develop the factual

10  basis of his claims.  The Court will address each claim separately.

11       1.  <u>Indigence</u>

12       Petitioner's claim of indigence is not sufficient to justify equitable tolling.  <u>See</u> <u>Hughes v.</u>

13  <u>Idaho State Bd. of Corrections</u>, 800 F.2d 905, 909 (9th Cir.1986) (pro se prisoner's illiteracy and

14  lack of knowledge of law unfortunate but insufficient to establish cause); <u>Marsh v. Soares</u>, 223

15  F.3d 1217, 1220 (10th Cir.2000); <u>Fisher v. Johnson</u>, 174 F.3d 710 (5th Cir. 1999); <u>Rose v. Dole</u>,

16  945 F.2d 1331, 1335 (6th Cir.1991). Petitioner's circumstances are no different than the majority

17  of incarcerated prisoners attempting to file petitions for writ of habeas corpus.  If indigence was

18  an excuse for not complying with the limitations period, Congress would never have enacted the

19  AEDPA as most incarcerated prisoners share these same problems.  Accordingly, Petitioner's

20  argument does not present extraordinary circumstances.

21       2.  <u>Lack of Transcripts</u>

22       Petitioner contends that he is entitled to equitable tolling because he had to expend time

23  obtaining a copy of his trial record.  (Opposition, at 19.)

24       Although the Ninth Circuit has observed that a counsel's failure to provide a copy of the

25  transcript to a Petitioner may warrant equitable tolling, this is only if the record shows that such

26  inability actually prevented Petitioner from filing a collateral petition.  <u>See</u> <u>e.g.</u> <u>United States v.</u>

27  <u>Battles</u>, 362 F.3d 1195, 1198 (9th Cir. 2004); <u>Lott v. Mueller</u>, 304 F.3d 918, 924-925 (9th Cir.

28  2002).  However, if the Petitioner has already discovered the factual predicate for his claim or the

1  transcripts are not necessary, equitable tolling is not warranted.  United States v. Battles, 362

2  F.3d at 1198.

3       In this instance, Petitioner did not act diligently in pursuing a copy of his transcripts.

4  Petitioner has simply failed to demonstrate that it was impossible for him to file his federal

5  petition without the trial transcripts or that he acted with diligence in attempting to obtain them.

6  Indeed, Petitioner acknowledges that he only sought to obtain the transcripts once he discovered

7  the "factual predicate" of his claims-six years after the California Supreme Court denied review.

8  Moreover, Petitioner undoubtedly knew of his alleged innocence during and immediately after

9  his trial and he could and should have requested a copy of his transcript in a timely fashion.  See

10  United States v. Battles, 362 F.3d at 1198 (noting that due diligence certainly includes a finding

11  that petitioner "consult his own memory of the trial proceedings").  Thus, it was Petitioner, and

12  not some extraordinary circumstance, that was the sole cause of the untimeliness.

13       Furthermore, Petitioner fails to demonstrate that the transcripts were a condition

14  precedent to filing a collateral petition.  The transcript, itself, did not provide the factual

15  predicate of his claim of actual innocence, rather, it was merely further documentary evidence to

16  support such claim.  In large part, with the exception of his actual innocence claim, Petitioner's

17  claims were dependent on the declarations, which is not prevalent in the trial record.  Therefore,

18  because the lack of the transcript did not prevent the factual discovery of his claims, Petitioner is

19  not entitled to equitable tolling.  See e.g. Hereford v. McCaughtry, 101 F.Supp.2d 742, 745-746

20  (E.D. Wis. 2000) (not knowing about claim until received transcript no excuse because ignores

21  that Petitioner knew about factual predicate).  Thus, Petitioner has failed to demonstrate that he

22  acted with due diligence in obtaining a copy of the trial transcript or that such transcript was the

23  actual "but for" cause of his untimeliness, and equitable tolling is not warranted.

24      3.  Ongoing Investigation

25       Petitioner contends that he is entitled to equitable tolling due to additional ongoing

26  investigations after he discovered the information set forth in the declarations.  (Opposition, at

27  19.)  Petitioner's claim is unfounded.

28       First, even if the Court accepts Petitioner's contention that he was conducting an

1  "ongoing investigation" such is not an extraordinary circumstance as every prisoner attempting to

2  challenge a fact-based claim must conduct some investigation.  In addition, as explained *supra*,

3  there is no merit to Petitioner's claim that the evidence was "newly discovered" to excuse his

4  delay.

5          Moreover, even if such "ongoing investigation" constituted an extraordinary

6  circumstance, Petitioner did not act with the requisite diligence.  According to Petitioner, he was

7  contacted in October 2005 in person by his aunt and mother and informed that there was

8  potential juror misconduct and ineffective assistance of trial counsel.  (Declaration of Petitioner,

9  Exh. L, to Petition; see also Lodged Doc. Nos. 15-16.)  However, a review of Petitioner's

10 incoming and outgoing prison legal mail log demonstrate that he did not request a copy of his

11 transcript from his appellate attorney until four months later in February of 2006.  (Opposition,

12 Exhibit A.)  On June 19, 2006, Petitioner received one box from the California Court of Appeal.

13 (Opposition, Exhibit A.)  Furthermore, Petitioner did not obtain the declarations from his mother

14 and aunt until, respectively, August 21, 2006, and November 4, 2006-several months after their

15 visit in October 2005.  (Lodged Docs. 15-16.)  Petitioner then waited until April 23, 2007, to file

16 a state habeas corpus petition asserting the juror misconduct and ineffective assistance of counsel

17 claims.  (Lodged Doc. No. 7.)  Petitioner also fails to present any reason why he waited five

18 months after he received the November 4, 2006, declaration of his sister to assert on April 23,

19 2007, his claims of misconduct by law enforcement and the prosecutor.  (Lodged Docs. 7, 17.)

20 Petitioner fails to demonstrate what, if any, additional information was discovered from the time

21 he was aware of the "newly discovered" evidence and the time he filed his state petition asserting

22 such claim or why he could not have filed the petition without such information.

23 Notwithstanding the delay in filing his second state petition, Petitioner also delayed another five

24 months to file his third petition after the second petition was denied.  (Lodged Doc. No. 8-9.)

25 Thus, even after Petitioner's claims were fully developed, he failed to exercise due diligence in

26 seeking relief. See e.g. Rhines v. Weber, 544 U.S. 269, 277-278 (2005) (pointing out that it

27 should not take long to present claims on collateral review that have already been developed and

28 prepared to a different court); Melancon v. Kaylo, 259 F.3d 401, 407-408 (5th Cir. 2001)

1  (petitioner did not act expediently in filing his federal petition since he waited four months after

2  the state supreme court denied relief before he filed the federal petition); Coleman v. Johnson,

3  184 F.3d 398, 403 (5th Cir. 1999) (lack of diligence demonstrated and equitable tolling

4  unwarranted because petitioner waited six months after being notified bout the denial of his state

5  petition before filing the federal petition); Donovan v. Maine, 276 F.3d 87, 94 (1st Cir. 2002)

6  (rejecting equitable tolling because the petitioner delayed for nearly two months after he received

7  transcripts).   Accordingly, Petitioner is not entitled to equitable tolling.

8  H.    Evidentiary Hearing

9          Petitioner contends an evidentiary hearing is mandated to resolve "(1) the AEDPA's time

10  limitations and regarding both equitable and statutory tolling, (2) ineffective assistance counsel,

11  (3) pre-trial investigations, (4) police and prosecut[utorial] misconduct, and (5) regarding the

12  facts alleged in the declarations of Hedrick and Ziegler."  (Opposition, at 25.)

13          Section 2254(e)(2) states:

14          If the applicant has failed to develop the factual basis of a claim in State court
            proceedings, the court shall not hold an evidentiary hearing on the claim unless
15          the applicant shows that-

16          A) the claim relies on

17          i) a new rule of constitutional law, made retroactive to cases on collateral review
            by the Supreme Court, that was previously unavailable; or
18
19          ii) a factual predicate that could not have been previously discovered through the
            exercise of due diligence; and

20          B) the facts underlying the claim would be sufficient to establish by clear and
            convincing evidence that but for constitutional error, no reasonable factfinder
21          would have found the applicant guilty of the underlying offense.

22          Rule 8(a) provides that where a petition is not dismissed at a previous stage in the

23  proceeding, the judge, after the answer and transcripts and record of the state court proceedings

24  are filed, shall, *upon review* of those proceedings, determine whether an evidentiary hearing is

25  required.  The purpose of an evidentiary hearing is to resolve the merits of a factual dispute.  An

26  evidentiary hearing on a claim is required where it is clear from the petition that: (1) the

27  allegations, if established, would entitle the petitioner to relief; and (2) the state court trier of fact

28  has not reliably found the relevant facts.  See Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th

1   Cir.1992).

2        In this instance, the state court did not find merit to Petitioner's claims sufficient to

3   warrant an evidentiary hearing, and such deficiencies apply in this Court as well.  In addition, for

4   the reasons explained above, Petitioner has failed to satisfy either of the requirements for an

5   evidentiary hearing.  As discussed herein, the instant motion to dismiss can be resolved on the

6   existing record and an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S.

7   465, 474 (2007) (evidentiary hearing unwarranted where "the record refutes the applicant's

8   factual allegation's or otherwise precludes habeas relief").  The Court can not and will not grant

9   Petitioner the opportunity to conduct a fishing expedition to further explore his claims.

10  Accordingly, because Petitioner has failed to demonstrate extraordinary circumstances and due

11  diligence to warrant entitlement to equitable tolling, he is not entitled to an evidentiary hearing.

12  See Roy v. Lampert, 465 F.3d 964, 969-970 (9th Cir. 2006); Laws v. Lamarque, 351 F.3d 919,

13  919 (9th Cir. 2003).  Nor has Petitioner demonstrated how an evidentiary hearing will further his

14  claims.  Therefore, Petitioner's request for an evidentiary hearing should be denied.

15  I.    Request to Stay

16        Petitioner requests that this Court stay the matter if it finds the petition untimely in order

17  for him to secure permission from the Ninth Circuit Court of Appeals to file a second or

18  successive petition.  Petitioner's claim is apparently based on his belief that he has presented a

19  prima facie showing for a second or successive petition, and the Court should stay the petition if

20  it intends to grant the motion to dismiss.  (Opposition, at 30.)  Petitioner's claim is mistaken.

21        28 U.S.C. § 2244 provides in relevant part:

22        (a) No circuit or district judge shall be required to entertain an application for a
           writ of habeas corpus to inquire into the detention of a person pursuant to a
23         judgment of a court of the United States if it appears that the legality of such
           detention has been determined by a judge or court of the United States on a prior
24         application for a writ of habeas corpus, except as provided in section 2255.

25        (b)(1) A claim presented in a second or successive habeas corpus application
           under section 2254 that was presented in a prior application shall be dismissed.
26
27        A plain reading of section 2244 reveals that it is only applies to a petitioner who seeks to

28  file a second or successive petition *after* an earlier petition challenging the same conviction has

1  been denied.  Thus, because this is Petitioner's first federal habeas corpus petition, his request to

2  stay pending authorization from the Ninth Circuit under section 2244 is misplaced and should be

3  denied.

4                                    RECOMMENDATION

5       Based on the foregoing, it is HEREBY RECOMMENDED that:

6       1.  Respondent's motion to dismiss the instant petition be GRANTED; and

7       2.  The instant petition for writ of habeas corpus be DISMISSED with prejudice.

8       This Findings and Recommendation is submitted to the assigned United States District

9  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

10 the Local Rules of Practice for the United States District Court, Eastern District of California.

11 Within **fifteen (15)** days after being served with a copy, any party may file written objections

12 with the court and serve a copy on all parties.  Such a document should be captioned "Objections

13 to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

14 and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

15 objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

16 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

17 may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

18 Cir. 1991).

19       IT IS SO ORDERED.

20   **Dated:    August 20, 2009**              **/s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE